UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JANETH GOYO RODRIGUEZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:26-cv-00026-TWP-KMB |
| | ) |
| SAM OLSON, | ) |
| KRISTI NOEM, | ) |
| PAMELA BONDI, | ) |
| SCOTT A MAPLES JR., | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on a Petition for Writ of Habeas Corpus filed by Petitioner Janeth Goyo Rodriguez, requesting that she be released from U.S. Immigration and Customs Enforcement ("ICE") detention or, alternatively, that she receives a bond hearing within three days. (Dkt. 1 at 12). Because the facts demonstrate that Goyo Rodriguez is eligible for bond, the petition is **granted** in that she is afforded a bond hearing by **February 17, 2026,** or released from detention under reasonable conditions of supervision.

**I.     BACKGROUND**

The material facts are undisputed.

Goyo Rodriguez is a citizen of Venezuela  and round July 5, 2022, she entered the United States through Mexico. (Dkt. 7-1 at 1) (ERO Narrative). On July 8, 2022, immigration agents served Goyo Rodriguez with a Warrant for Arrest of Alien (Form I-200), which authorized the agent to take her into custody under 8 U.S.C. § 1226. (Dkt. 7-2 at 8). Federal agents also served Goyo Rodriguez with a Notice to Appear, placing her in removal proceedings under 8 U.S.C. § 1229a. *Id.* at 1. The Notice alleged that Goyo Rodriguez "[was] not then admitted or paroled after

1

inspection by an Immigration Officer," and charged her as "subject to removal" per § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *Id.* That same day, she was released on her own recognizance. *Id.* at 4. The "Notice of Custody Determination" stated, "Pursuant to the authority contained in [8 U.S.C. § 1226] and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case," Goyo Rodriguez will be "released" on her own recognizance. *Id.*

Goyo Rodriguez has a pending asylum application with the United States Citizenship and Immigration Services ("USCIS") as well as approved employment authorization. (Dkt. 7-1 at 2). On October 16, 2025, she reported to the ICE Field Office in Illinois for an appointment. *Id.* During her appointment, an ICE agent arrested Goyo Rodriguez pursuant to a Warrant for Arrest of Alien (Form I-200). (Dkt. 7-3). Goyo Rodriguez was subsequently transferred to the Clark County Jail in Jeffersonville, Indiana, where she remains detained. (Dkt. 1 ¶ 41). The record does not show that Goyo Rodriguez moved for or has been given a custody re-determination hearing.

## II.    DISCUSSION

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Goyo Rodriguez claims that her current detention violates the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). *Id.* ¶¶ 44–50. Respondents argue that Goyo Rodriguez's petition is premature; that she is lawfully detained under 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, she is lawfully detained under 8 U.S.C. § 1226(a) because she will have the opportunity to receive a hearing; and that her detention is constitutional. (Dkt. 7).

The Court finds that Goyo Rodriguez's detention is governed by § 1226(a) and that it is unlawful because she has not been afforded a bond hearing. Because she is entitled to habeas corpus relief on these grounds, the Court does not address her other arguments.

### A. Exhaustion

Respondents argue that Goyo Rodriguez's claims are premature because she has not moved for a bond hearing. (Dkt. 7 at 7). This Court has previously determined that exhaustion is not required because doing so would be futile given the holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025), that immigration judges lack authority to hear bond requests or grant bond to noncitizens such as Petitioner. *See Delgado Avila v. Crowley*, No. 2:25-cv-00533-MPB-MJD, 2025 WL 3171175, *2 (S.D. Ind. Nov. 13, 2025); *Mohammed v. Olson*, No. 1:25-cv-2404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025); *Chesme Bazurto v. Olson, et al.*, No. 1:26-cv-00122-SEB-CSW, 2026 WL 285993, *2 (S.D. Ind. Feb. 3, 2026); *Morales Sandoval v. Crowley, et al.*, No. 2:25-cv-00560-JRS-MKK, 2025 WL 3760760, *2 (S.D. Ind. Dec. 30, 2025); *Choudhary v. Swearningen, et al.*, No. 2:26-cv-00041-JPH-MG, 2026 WL 205513, *2 (S.D. Ind. Jan. 26, 2026); *Diaz Gonzalez v. Swearningen, et al.*, No. 1:25-cv-02141-RLY-TAB, dkt. 14 at 8-10 (S.D. Ind. Nov. 18, 2025). Respondents cite no intervening precedent that would change this Court's determination that exhaustion is not required.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v.*

*Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond . . . ; or
> > >
> > > (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall

4

order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**C. Goyo Rodriguez Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Goyo Rodriguez is eligible for a bond hearing under § 1226(a). The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Goyo Rodriguez who have lived in the interior of the United States for years. *See, e.g., Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Mohammed*, 2025 WL 3541819 at *3–5; *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029424, *3-5 (S.D. Ind. Oct. 30, 2025). As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a

5

recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See, e.g., Mohammed*, 2025 WL 3541819, at *3–5.[1] Respondents have cited no binding precedent to the contrary. And as the Seventh Circuit recently explained, "seeking admission" under § 1225(b)(2)(A) cannot be read as synonymous with "applicant for admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[2]

In addition, except for detaining Goyo Rodriguez for four months without considering her eligibility for bond, the Respondents' treatment of Goyo Rodriguez has been entirely consistent with § 1226, not § 1225. In July of 2022, federal agents apprehended Goyo Rodriguez near the U.S.-Mexico border and served her with a warrant that explicitly referenced their authority to take her into custody under § 1226. Then, instead of immediately detaining her and processing her for expedited removal pursuant to § 1225(b)(1) or mandatory detention during full removal proceedings under § 1225(b)(2)(A), they released her on an order of recognizance, serving her with an order that explicitly authorized her release pursuant to § 1226 and its corresponding regulations. Indeed, as seen above, release is not contemplated under § 1225 except in

---

[1] The Court incorporates by reference its more fulsome statutory interpretation of 8 U.S.C. §§ 1226 and 1225 and corresponding analysis of the circumstances to which those statutes apply in *Mohammed*, 2025 WL 3541819 at *3–5.

[2] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("At a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that."). The Court also acknowledges *Buenrostro-Mendez v. Bondi*, which a panel of the Fifth Circuit Court of Appeals recently decided after briefing had been complete in this case. *Buenrostro-Mendez* concludes that "seeking admission" is not limited to "arriving" noncitizens and therefore supports the respondents' position in this case. No. 25-20496, --- F.4th ---, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026). But the Fifth Circuit's decision is neither persuasive to us nor binding on us; instead, we defer to the Seventh Circuit's persuasive analysis in *Castañon-Nava*.

circumstances that do not apply here, such as humanitarian parole. Then, three years later, federal agents arrested Goyo Rodriguez in the midwestern state of Illinois. In doing so, they served her with an administrative warrant that explicitly authorized her detention under § 1226. Given the government's treatment of Goyo Rodriguez in 2022 and 2025, it cannot plausibly now maintain that she is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *Singh*, 2025 WL 3029524, at *6 (citing *Patel v. Crowley*, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *Valencia Zapata v. Kaiser*, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a).").

These facts are quite different from the facts presented in *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026), which Respondents briefly reference in support of their position that Section 1225 applies to Goyo Rodriguez. Unlike Mr. Cruz Rodriguez, who had no immigration record and was subjected to a warrantless arrest, Goyo Rodriguez was released after her initial encounter with federal immigration officials in July of 2022 and then most recently arrested pursuant to an administrative warrant. *Cruz Rodriguez* therefore does not apply here.

Accordingly, the Court concludes that Goyo Rodriguez is entitled to a bond hearing under § 1226, and it declines to reach her other arguments.

### D. Opportunity for Bond Hearing

In the alternative, Respondents argue that Goyo Rodriguez is being lawfully detained under § 1226a "because she will have the opportunity to receive a hearing before an Immigration Judge."

7

Dkt. 7 at 14. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Respondents intend to provide Goyo Rodriguez with a *bond* hearing. In fact, Respondents contend that Goyo Rodriguez is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition. Goyo Rodriguez has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, her detention pursuant to § 1226(a) is currently unlawful.

### III.   SCOPE OF RELIEF

Goyo Rodriguez asks the Court to order her immediate release. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Goyo Rodriguez's immediate release and instead orders Respondents to provide her with a bond hearing. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Goyo Rodriguez maintains—and the Court agrees—that her detention without consideration of bond is contrary to law because her detention is authorized by § 1226(a), which makes her eligible for discretionary release but also allows the government to "continue to detain" her. 8 U.S.C. § 1226(a)(1). Goyo Rodriguez's custody is not

8

unlawful because of the very fact that she is detained. Rather, her custody is unlawful only to the extent the government refuses to consider whether she may be released as the law requires.

The Court also notes that Goyo Rodriguez's request for relief asks the Court to shift the burden of proof when an immigration judge assesses the appropriateness of bond. The question presented to this Court in this and every other habeas action is whether the petitioner's present custody violates the Constitution or laws or treaties of the United States. The undisputed record demonstrates that Goyo Rodriguez's custody violates the INA because the government has denied her consideration of bond. That violation can be cured with a bond hearing, conducted according to the regulations accompanying § 1226(a), and followed by a decision on the merits. If Goyo Rodriguez remains detained after that process is completed, or if she is re-detained after being released, she may bring another habeas petition and demonstrate why the new circumstances of her detention are contrary to law or the U.S. Constitution.

## IV.    **CONCLUSION**

The Court **GRANTS** the petition to the extent that by **February 17, 2026,** Respondents must either: (1) provide Goyo Rodriguez with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Goyo Rodriguez from custody, under reasonable conditions of supervision. Respondents must file documentation certifying that they have provided Goyo Rodriguez with a bond hearing by **February 19, 2026**. If Respondents release Goyo Rodriguez, then they must file documentation certifying her release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 2/10/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

9

Distribution:

Alush Kola
Law Offices of Al Kola
alkolalaw@yahoo.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov